Good morning, everyone. Rigoberto Cervantes was a blue-collar worker, regular guy. He has, as indicated in the pre-sentence report, a very well-established work history. He's worked in construction. He's worked in janitorial. He's paid his taxes. He'd been in some minor trouble before, but no serious criminal activity before he got caught up in this case. He's generally a guy that follows the rules, but he did make a very bad decision. He agreed to drive a vehicle that had methamphetamines in it from Arizona to Omaha, Nebraska for $4,000. Since the time after his jailhouse interview, he has always represented that that's the nature of what he did wrong. This guy is a distrusted mule. He's not a part of this underlying criminal organization. He has minimal knowledge of the people that are involved in what's going on. At his safety valve hearing, first of all, of course, he had a safety valve interview that involved Officer Rock. Officer Rock concluded that Mr. Cervantes was not honest in that interview, in his opinion. Like the case earlier today, the only thing in question is the fifth prong. In fact, there's a stipulation on the record that the other four prongs are satisfied. So what do we do with the fact that Judge Girard found your man was not credible? That's the finding, isn't that the finding that you're challenging? Well, I'm challenging the determination that the safety valve doesn't apply in this case. The problem is, first, that Judge Girard has interpreted into the safety valve. He treated this like a proffer, not like a safety valve. He interpreted into this that just because Mr. Cervantes gave a safety valve interview, that he should be able to identify the top person that's involved in this. My point is he has no idea. Mr. Cervantes doesn't know. He identified Jose and he identified his co-defendant Valdez, who Jose sent to follow him here because he's so distrusted by this organization. I would suggest to the court that Jose is code language for mind your own business. This is a guy he met at a party. He didn't have ongoing contact with these people. The police had his phone. They had the data in his phone that he was traveling with. They didn't present any kind of evidence that he had contact with anyone else. It's just that Officer Rock asserted that Mr. Cervantes wasn't honest in the interview, only because of the jailhouse interview. He didn't point to any other interposing . . . Well, what about that? Judge Girard relied on that too. He said in the post-arrest interview, Cervantes identified various people, and then later he said he didn't know who they were. And that's not . . . I wouldn't agree with that characterization. I would say to the court here that he did give a last name for Jose previously at the jailhouse interview, and then he later clarified that he didn't actually know this Jose guy's last name. And my point is, there's nothing sort of in between the jailhouse interview and his safety valve interview where there's other inconsistencies. So his petition to enter a plea is consistent with his safety valve interview. His statement of the facts to probation for the PSR is consistent with his safety valve interview. Everything after that jailhouse interview is consistent up until the time of his safety valve interview. And the problem is, he can't very easily prove a negative. He can't prove that he doesn't know these other people. And the government doesn't necessarily have any obligation whatsoever to produce evidence or adduce evidence at the hearing that the safety valve interview was not honest or was, in some fashion, incomplete. However, in every other case that I can find, there's something in the record that shows the person was lying. And in fact, even the case today, Mr. McGee was pointing to things in the record that demonstrated why the government believed that the defendant in that case wasn't being honest. There's just nothing here in this case. This gentleman, his only involvement ever was to drive this vehicle here. There's nothing else in Officer Rock's investigation that he points to that says, well, I know you're lying because when we talked to these people, they said that you did this on this other occasion as well. Or that I know that you know this other person that was involved and you didn't admit to me that you know that person. And I know that because of an interview with Valdez or because of the data on your cell phone. They don't point to anything. They just say, well, at the jail, he said something different. Well, at the jail, he's scared out of his mind. He's high on drugs. And I don't think he even knows what he's doing. He's scared. He wants to get away from the police. He wants to get out of the situation he's in, but it's not going to happen. But at that time, whatever comes out of his mouth comes out of his mouth. He has many, many months to sit in jail and think about this. And to come clean and tell what he knows. It's not his fault that he doesn't have a great deal of information about the criminal enterprise. If he got pulled over, rather than if he hadn't ran out of gas and stopped at this gas station and his co-defendant came to assist him with the problem of being out of gas, the government never could have figured out who anyone in this thing involved was. Because Mr. Cervantes didn't know. I think they only got as far as they got because Valdez was involved in this arrest. I mean, she was also arrested. She's the person that was essentially sent as surveillance to make sure that he got to town, to make sure he did what he agreed to do. He was not entrusted to do this on his own. You know, by implication, that's got to establish that these people, they're demonstrating that they don't know him. They don't trust him. They don't trust him to do this himself. And so I think that the court has errantly interpreted the statute to read in a requirement that Mr. Cervantes provide useful information because that's what the judge wanted to know. And he says on the record, I don't care about these inconsistencies that you're bringing up. What I care about is, who is this guy? Who is the guy that owns the dope or that's in charge of everything? He just doesn't know that. And there's nothing anywhere in the record to suggest that he should know that. There's no testimony. There's no proffer. There's no other safety valve interview. There's nothing that probation found. There's nothing else there that's inconsistent with him telling the government, he's a mule and I don't really know who everybody else was. If there aren't any questions, I'll save the rest of my time for a vote. Thank you. Very well. Mr. Conboy, we'll hear from you. Thank you, Your Honor. If it please the court, Mr. Mitchell. My name is Martin Conboy. I do represent the United States. After hearing argument and this case is submitted, I'm going to ask that you affirm the decision of the district court done by Judge Girard. The defendant does raise three arguments in his brief. However, I think they could all be dispelled with just one argument and that is whether or not the defendant was, or excuse me, Mr. Cervantes was truthful during his safety valve interview. I think the record is replete with a number of inconsistencies that establish that he wasn't. Judge Girard, who heard the testimony of Mr. Cervantes, made a credibility finding of Mr. Cervantes and said that he was not credible. Conversely, he found that Mr. Rock was credible based on his testimony. Just to talk about these inconsistencies and what Mr. Girard said, he found that some of the inconsistencies were minor that he wasn't putting much weight into. For instance, where he picked up the truck or who, whether or not it was from Jose or his wife, but what Judge Girard found was significant was the fact that Mr. Cervantes, during his initial post-arrest interview, had given specific information, such as he is the one that said, yeah, I was transporting five pounds of methamphetamine, weight and amount, or weight and type. At the safety valve interview, he said, I don't know how much, I don't know of what. After some haggling back and forth, he finally comes clean and says, okay, you're right, I did admit it was methamphetamine, but I don't know how much. So he was never as alleged to be truthful ever since his safety valve interview. He admitted he was dishonest during his safety valve interview. Furthermore, this wasn't an investigation in a vacuum. As Investigator Rock testified to, they had a pretty good idea who one of the participants was in Phoenix, and that was Romano De Jarano. That's on page 31 of the transcript of sentencing. Investigator Rock shows Mr. Cervantes' photo as people that were involved, and this is based on what Mr. Cervantes is telling them. This isn't what Mr. Rock, or Investigator Rock, is saying. This photograph is shown in response to what Mr. Cervantes says, and he says, that's Fu. Not fool, Fu. And he also talked about a person by the name of, and I always get this wrong too, Cabazon, as the person that was paying him. So Fu was the one that made arrangements, Cabazon was the one that was paying him, and Jose Marcus, my friend Jose Marcus, is the one who gave me the drugs. This was very specific information offered by Mr. Cervantes, and as the investigation went forward, and the proffers were done, and then ultimately resulting in a sentencing, instead of being able to identify anybody in the investigation, the only person that Mr. Cervantes now knows is the co-defendant that's also been arrested. Does he identify, talk about Fu anymore? He says no. Did you make it up? Perhaps. Because I was scared or nervous. Same with Cabazon. Then he denies he even knows a person by the name of Jose Marcus, or at least he just says he knows Jose, but forgets that he already told the officers that his name was Jose Marcus. One thing I would like to point out specifically, is that Mr. Cervantes did not do a very good job of going back and looking at information that he had already provided to the government to refresh his memory. When he got to the sentencing hearing, he even admitted he doesn't remember anything from the initial interview, the information that he'd given. So when he comes back in and he starts talking about it, it's one of those things where everybody puts their pin down, like, wow, we're going backwards here. What's going on? And as the investigators kept trying to flesh out information, it was different, parts of it significant, parts of it minor. And then when we get to the sentencing hearing, it's the same thing. Counsel, let me ask you a question about an issue here that raises some concern. If you think about the safety valve process and the safety valve interview as a final opportunity for the defendant to come clean, so to speak, does that by definition quite often mean that there's going to be a difference in the information provided in the safety valve interview and information that the defendant may have provided earlier in the investigation? And is that really what we want to use as the reason that safety valve relief is denied? If somebody does provide inconsistencies in an earlier statement, they are given the opportunity to correct those statements. It does happen a lot that people do give information that's not correct. I mean, really, it seems almost by definition this is what's going to happen. Not necessarily. Just because you give an inconsistent statement, there's no, especially at an earlier interview, it does not preclude somebody before sentencing from giving a truthful statement. In fact, the safety valve by its definition itself makes that guarantee that prior to the time of sentencing, you can give a truthful statement. It does happen all the time that people give inconsistent statements at the beginning and then come forth later and say, yeah, I was lying. The difference between this and that is the particular information that he was providing. This wasn't information. For instance, for him to come forward and say, there were five pounds of methamphetamine in this truck. And guess what? There was five pounds of methamphetamine in this truck. And then he comes by and says, yeah, I don't know what I was transporting and I don't know what was in there. That's not somebody that is, the original information was accurate. And then to come back later and say, that was just a guess that he got that right or that inconsistent statement or the first one was an inconsistent statement as Parkinson's didn't know it was true. I understand what you're saying, Judge, but the bottom line is what Investigator Rock testified also was during an initial investigation, it's more likely that we might get different information. However, a proffer interview, you have your attorney there, you have assurances or some protections by the proffer letter that's usually given by the government, which was done in this case. So at that point, the information is more likely to be true. In this particular case, the inconsistencies that he was giving were pretty glaring. And that's why when you get to the district court as sentencing and Judge Drouard is hearing this information, that's why he came to the credibility finding. It's just, it was incredible. And it wasn't just some of the ones I cited. I mean, there was a litany of inconsistencies. Even in particular... Well, other than inconsistencies, what were the statements that are simply contradicted by independent investigation or independent facts that are undisputed? For example, in the safety valve interview, did he make a statement about how much drugs were there that's contradicted by, for example, law enforcement seizing and weighing the drugs? I don't know. That's just an example that comes to mind. But you get what I'm saying. You didn't answer your own question because that's a perfect example of something that was corroborated by the investigation itself with something that he said. And that was, there was five pounds of methamphetamine in the vehicle. Law enforcement was able to confirm that on their own, that there was five pounds of methamphetamine in that vehicle. The problem is, it's almost like proving a double negative. Then he gets to the safety valve and then sentencing and then denies that he said that in the first place. So that is information they provided that was corroborated. In addition, as I mentioned earlier, this investigation didn't occur in a vacuum. They knew who this Romero de Jarauno was. They weren't sure if this was Fu or Cabazon, which one it was. So when Mr. Cervantes then does approach and say, yes, this Fu, yeah, that's him in that photograph. That's information that was corroborating what law enforcement already knew. So then it was kind of awkward. Then later when he comes back and says, yeah, actually I don't know who Fu is. He's the one that provided that name. He's the one that provided the name Cabazon. Law enforcement knew who these folks were. They did exist. So then he comes forward and says, I know who they are. They're like, okay, great. We know who they are too. Which one is it? He says it's that one. And then later says, yeah, I don't know who that was. I just made it up or something along those lines. I was scared perhaps. So again, it's not so much that the information that he later forgot was incorrect. I would ask this panel to affirm the decision by Judge Gerard. Find that Mr. Cervantes was untruthful and not credible and affirm the district court decision. All right. Thank you for your argument. Would you care to make rebuttal, Mr. Mitchell? Yes, thank you. All right. This is a little bit difficult to do. In this regard, because we keep talking about the jailhouse interview and neither side submitted anything other than basically what Officer Rock said occurred in the jailhouse interview. Well, what's wrong with that? He recounted what happened. The judge said he was credible. So unless you can undermine his credibility, that's the jailhouse interview. I guess where I'm at with it is he was showed a picture at that interview. Hadn't given any names. He was showed a picture and they said, do you know who this is? And he said, yeah, that's Fu. And then at their prompting, asking him what Fu did, did Fu do this, did Fu do that, he just agreed with him. He didn't come up with Cavazon. I'm sorry, I respectfully disagree with Mr. Convoy. The officers were asking about Cavazon because I've met that guy before. That guy is Fu. But he didn't... Well, did he say, or at least was the testimony that at the initial jailhouse interview he identified Fu as the person who had contacted him and arranged for him to make the delivery? I think that's what Officer Rock testified to. Rock also says that Cervantes said that Cavazon was going to pay him for the delivery. Where I'm at with this is that they're picking losers and winners from these safety valve interviews. And these people are not in a position to prove the negative. They're not in a position to prove that they don't have that knowledge. Again, the only inconsistency is from that first interview. The other cases that I've seen, there have been multiple inconsistencies along the way to that safety valve interview, and there's been other stuff in the record to indicate that they're lying, even if the government's not put to evidence or put to a burden of that evidence. There's still, in every case, there's something there that shows. But why do you need additional independent evidence if you have a case where the defendant acknowledges knowing certain things and then turns around and denies them later? Why isn't that enough to find by preponderance, or I guess to say he didn't show by preponderance that he was fully truthful? Well, as Judge Shepard pointed out a minute ago in his discussion with Mr. Conboy, that always happens. They always tell a different story at the jail when they're first arrested. So I don't know if it really matters what part of the story is different. What I do know is that Judge Girard was only concerned with my client, Mr. Cervantes, identifying who the lead person in this criminal organization was. He didn't know. He just drove the truck here. My time is up, and I thank you for your argument. The case is submitted, and the court will file an opinion in due course. That concludes the argument.